After Recording Return To:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

This Document Prepared By:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067
Tatiana Vakidis

Parcel ID Number: 4841-07-16-0050

_____ [Space Above This Line For Recording Data] _____

| Original Recording Date: **September 09, 2004** | Loan No: |
| Original Loan Amount: **$297,500.00** | Investor Loan No: |
| New Money: **$3,033.23** | MIN Number: |

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 3rd day of April, 2014, between **KATHLEEN ABRAHAM** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **August 17, 2004** and recorded in **Book/Liber OR 38147**, Page **364**, Instrument No: **104310243**, of the **Official Records (Name of Records) of BROWARD County, FL (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**11767 NW 48TH ST, CORAL SPRINGS, FL 33076,**
(Property Address)
the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument   Form 3179 1/01 (rev. 06/12)
8300a 01/14   (page 1 of 7)

1.  As of **April 1, 2014**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$300,406.94**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.625%**, from **April 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,374.75**, beginning on the **1st** day of **May, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.625%** will remain in effect until principal and interest are paid in full. If on **April 1, 2054** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   (e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

   (f) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8.  Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records Book OR 38147, Page 364, Instrument No: 104310243, Public Records of BROWARD County, Florida from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder. As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued by unpaid interest, secured by the existing mortgage is equal to $297,373.71. The principal balance of the new obligation secured by this Mortgage is $300,406.94, which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation, plus accrued by unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
KATHLEEN ABRAHAM -Borrower

_____-Witness        _____-Witness
Signature                          Signature

Sweette Menna Smith -Witness       Nicole Macas -Witness
Print Name                         Print Name

_____ [Space Below This Line For Acknowledgments] _____
State of Florida
                              ss.
County of BROWARD

The foregoing instrument was acknowledged before me this 16th day of April, 20 14,
by KATHLEEN ABRAHAM

who is personally known to me or who has produced FL DL as identification.

_____
(Signature of person taking acknowledgment)
SWEETA BIRBAL
(Name typed printed or stamped)
NOTARY PUBLIC
(Title or Rank)
EE 124837
(Serial Number if any)
My Commission expires : 08/24/2015

[Notary stamp: SWEETA BIRBAL, Notary Public - State of Florida, My Comm. Expires Aug 24, 2015, Commission # EE 124837]

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 06/12)
8300a 01/14                                                                      (page 5 of 7)

**NATIONSTAR MORTGAGE LLC**

By: _____Kuow_____ (Seal) - Lender
Name: _____Krista Moore_____
Title: _____Assistant Secretary_____

Date of Lender's Signature: 4-25-14

_____ [Space Below This Line For Acknowledgments] _____

State of ___Texas___
County of ___Dallas___ ss.

The foregoing instrument was acknowledged before me this _25_ day of __April__, 20_14_, by ___Krista Moore___, the ___Assistant Secretary___ of Nationstar Mortgage LLC,

who is personally known to me or who has produced _____ as identification.

_____
(Signature of person taking acknowledgement)

Bianca Hockensmith
(Name typed printed or stamped)

Notary Public
(Title or Rank)

128904943
(Serial Number if any)

My Commission expires: 3/2/16

[Notary Seal: BIANCA HOCKENSMITH, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 03-02-2016]

_Kmove_ 4.25.14       Krista Moore
_____
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title:   **Assistant Secretary**

_____ [Space Below This Line For Acknowledgments] _____

State of ___Texas___

County of ___Dallas___   ss.

The foregoing instrument was acknowledged before me this __25__ day of __April__, 20_14_,

by _____Krista Moore_____, the ___Assistant Secretary___ of

_____Mortgage Electronic Registration System, Inc._____,

who is personally known to me or who has produced _____ as identification.

_[Notary seal: BIANCA HOCKENSMITH, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 03-02-2016]_

_____
(Signature of person taking acknowledgement)

Bianca Hockensmith
_____
(Name typed printed or stamped)

Notary Public
_____
(Title or Rank)

128904943
_____
(Serial Number if any)

My Commission expires : __3/2/16__

Loan No.: ▊▊▊▊▊▊▊
Borrower: KATHLEEN ABRAHAM

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, KATHLEEN ABRAHAM ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated August 17, 2004, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to

AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12 (Page 1 of 2)

Loan No.: ▮
Borrower: KATHLEEN ABRAHAM

Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____    4-16-14
Borrower - KATHLEEN ABRAHAM    Date

_____    _____
Borrower -    Date

_____    _____
Borrower -    Date

_____    _____
Borrower -    Date

AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12    (Page 2 of 2)

Loan No.: ▮▮▮▮▮▮
Borrower: KATHLEEN ABRAHAM

## COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 11767 NW 48TH ST, CORAL SPRINGS, FL 33076 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_____     4-16-14
Borrower - KATHLEEN ABRAHAM           Date

_____     _____
Borrower -                           Date

COMPLIANCE AGREEMENT 11/12                                    (Page 1 of 1)

Date: April 3, 2014

Loan Number: ▮▮▮▮▮▮
Lender: NATIONSTAR MORTGAGE LLC

Borrower: KATHLEEN ABRAHAM

Property Address: 11767 NW 48TH ST, CORAL SPRINGS, FL 33076

# Florida
## Affidavit of Continuous Marriage

STATE OF FLORIDA

COUNTY OF **BROWARD**

BEFORE ME, the undersigned Notary Public, personally known to me or who had produced **FL DL** as identification appeared **KATHLEEN ABRAHAM**, (hereinafter "Affiant"), who being by me first duly sworn, deposes and says:

1. Affiant is over the age of eighteen (18) years.
2. This Affidavit pertains to the following real property: **11767 NW 48TH ST, CORAL SPRINGS, FL 33076**
3. Affiant is executing this Affidavit for the purpose of establishing in the public records that he/she is married to **John Abraham**, and such marriage has been continuous and uninterrupted from a date prior to his/her acquisition of the above-described property through the date of this Affidavit.
4. Affiant is aware that grantee/lender and _____ Title Insurance Company are relying upon this Affidavit to issue title insurance policies without exception to the matter(s) noted above.
5. Affiant is familiar with the nature of an oath and with the penalties provided by the laws of the State of Florida for falsely swearing to statements made in an Affidavit of this nature.

Affiant has caused this Affidavit to be executed this **16** day of **April**, 20**14**.

_____
KATHLEEN ABRAHAM

SWORN TO AND SUBSCRIBED before me this **16th** day of **April**, 20**14**.

_____
Notary Public
My Commission Expires: **08/24/2015**

SWEETA BIRBAL
Notary Public - State of Florida
My Comm. Expires Aug 24, 2015
Commission # EE 124637

8376 11/12

# Exhibit "A"

Loan Number: ▮

Property Address: **11767 NW 48TH ST, CORAL SPRINGS, FL 33076**

Legal Description:

THE LAND REFERRED TO IN THIS POLICY IS SITUATED IN THE STATE OF FLORIDA, COUNTY OF BROWARD, CITY OF CORAL SPRINGS, AND DESCRIBED AS FOLLOWS: DESCRIPTION OF SITE 5, PELICAN TRAIL EASTA PORTION OF PARCEL A, WYNDHAM LAKES EAST, AS RECORDED IN PLAT BOOK 159, PAGE 50 OF THE PUBLIC RECORDS OF REWARD COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING, AT THE MOST EASTERLY CORNER OF SAID PARCEL A; THENCE SOUTH 73 DEGREES 31 MINUTES 34 SECONDS WEST, A DISTANCE OF 1151.85 FEET TO THE POINT OF BEGINNING; SAID POINT BEING THE POINT OF INTERSECTION WITH A NON-TANGENT CURVE, CONCAVE SOUTHEASTERLY, HAVING A RADIUS OF 610.00 FEET AND A CENTR L ANGLE OF 16 DEGREES 23 MINUTES 34 SECONDS, THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, FROM WHICH A RADIAL BEARING AT SAID POINT BEARS SOUTH 33 DEGREES 56 MINUTES 08 SECONDS EAST, A DISTANCE OF 174.53 FEET; TO A POINT OF NON-TANGENT INTERSECTION WITH A CURVE, CONCAVE NORTHEASTERLY, HAVING A RADIUS OF 210.00 FEET AND A CENTRAL ANGLE OF 18 DEGREES 25 MINUTES 32 SECONDS, THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, FROM WHICH A RADIAL BEARING AT SAID POINT BEARS NORTH 40 DEGREES 58 MINUTES 44 SECONDS EAST, A DISTANCE OF 67.53 FEET TO THE POINT OF INTERSECTION WITH A NON-TANGENT LINE; THENCE NORTH 50 DEGREES 20 MINUTES 56 SECONDS EAST, A DISTANCE OF 126.47 FEET; TO A POINT OF NON-TANGENT INTERSECTION WITH A CURVE, CONCAVE NORTHERLY, HAVING A RADIUS OF 54.00 FEET AND A CENTRAL ANGLE OF 80 DEGREES 04 MINUTES 11 SECONDS, THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, FROM WHICH A RADIAL BEARING AT SAID POINT BEARS NORTH 46 DEGREES 08 MINUTES 02 SECONDS EAST, A DISTANCE OF 75.46 FEET TO THE POINT OF INTERSECTION WITH A NON-TANGENT LINE; THENCE SOUTH 33 DEGREES 56 MINUTES 08 SECONDS EAST, A DISTANCE OF 10.00 FEET, TO THE POINT OF BEGINNING; CONTAINING 0.1993 ACRES OF LAND, MORE OR LESS SUBJECT TO EASEMENTS, RESTRICTIONS, RESERVATIONS AND LIMITATIONS OF RECORDS, IF ANY. TOGETHER WITH ALL THE TENEMENTS, HEREDITAMENTS AND APPURTENANCES THERETO BELONGING OR IN ANYWISE APPERTAINING.